IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

WENGER MANUFACTURING, INC., )
)
        Plaintiff, )
)
v. ) Case No. 05-0458-CV-W-ODS
)
BILL BUTLER, )
)
        Defendant. )

### ORDER (1) GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, (2) GRANTING PLAINTIFF'S MOTION TO SHORTEN TIME TO RESPOND TO DOCUMENT REQUESTS, AND (3) GRANTING PLAINTIFF'S MOTION TO ALLOW IMMEDIATE DEPOSITIONS

Pending are Plaintiff Wenger Manufacturing, Inc.'s Motion for Temporary Restraining Order (Doc. # 2), Plaintiff's Motion to Shorten Time to Respond to Document Requests to Seven Days (Doc. # 5), and Plaintiff's Motion to Allow Immediate Depositions of Parties and Non-Parties Prior to Preliminary Injunction Hearing (Doc. # 6). Having considered the arguments presented by the parties through their briefs and to the Court on May 17, 2005, the Court grants Plaintiff's motions for the following reasons.

### I. BACKGROUND

Plaintiff Wenger Manufacturing, Inc. ("Wenger") requests that the Court issue a temporary restraining order enjoining Defendant from violating the express provisions of his non-compete agreement with Plaintiff. In the covenant not to compete, which was signed by Defendant on October 8, 1997, Defendant agreed that upon the termination of his employment with Plaintiff he would not become employed by any of Wenger's competitors or any seller of food extrusion process equipment for two years and he

would not disclose Wenger's trade secrets. Ex. A. to Pl.'s Mot. for T.R.O. On January 21, 2005, Defendant resigned from Wenger and is currently employed by Clextral Group, one of Wenger's alleged competitors, in Tampa, Florida. Compl. ¶ 23.

On May 16, 2005, Plaintiff filed its Complaint asserting claims of breach of contract and unfair competition and seeking injunctive relief as well as compensatory damages. Plaintiff simultaneously filed its Motion for Temporary Restraining Order.

## II. STANDARD

In determining whether a plaintiff should be granted a temporary restraining order, this Court must weigh "the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." Pottgen v. Mo. State High Sch. Activities Ass'n, 40 F.3d 926, 928 (8th Cir. 1994).

## III. DISCUSSION

A. Probability of Success on the Merits

The Court finds that Plaintiff has a significant probability of success on the merits. In order to be enforceable, a covenant not to compete must (1) be reasonable as to time, (2) be reasonable as to geographic area, (3) protect a legitimate business interest, (4) not impose an undue burden on the employee, and (5) not injury the public. Allen, Gibbs & Houlik, L.C. v. Ristow, 94 P.3d 724, 726 (Kan. App. 2004) (citing Weber v. Tillman, 913 P.2d 84, 90 (Kan. 1996)).[1]

---

[1]The employment agreement states that it shall be governed by the laws of Kansas. Ex. A to Pl.'s Mot. for T.R.O. For this reason, Defendant's contention that the Court should follow Western Forms, Inc. v. Pickell, 308 F.3d 930 (8th Cir. 2002), is not binding on the Court. Rather, it is some indication of what the Court of Appeals might do.

2

Before considering whether the covenant not to compete is enforceable, the Court must address whether the covenant not to compete was still in effect at the time Defendant left his employment with Wenger. The employment contract executed by Defendant on October 7, 1997, stated that the employment agreement "shall be automatically extended for additional one (1) year terms unless notice to terminate is given. . . ." Ex. A to Pl.'s Mot. for T.R.O. Contained within the employment contract is a provision forbidding Defendant from disclosing confidential information and a provision restricting Defendant's employment after leaving the company.

> 12. <u>Restrictive Covenant.</u> In the event of the termination of Employee's employment, employee hereby agrees that for a a period of two (2) years, he will not, within any world-wide territory geographic area in which Employer seeks business, directly or indirectly, own, operate, manage, control, be employed by, participate in, or be connected in any manner with the ownership, operation, management, or control of any business similar to the type of business conducted by Employer at the time of termination of the employment under this agreement. . . .

Ex. A to Pl.'s Mot. for T.R.O. The record does not reflect that the employment agreement was terminated by either party prior to Defendant leaving his employment with Wenger. Thus, the contract, including the covenant not to compete, was enforceable at the time Defendant resigned.

Clextral Inc., Defendant's current employer, sells food extrusion equipment, which is primary used to manufacture human food. Def.'s Aff. ¶¶ 4, 5. Wenger, likewise, manufactures and sells extrusion equipment which is used in the production of human food. While this equipment constitutes approximately ten percent of Plaintiff's business, that is sufficient to make Clextral, Inc., a business which engages in "business similar to the type" conducted by Wenger.

The Court must next turn to whether the covenant not to compete is enforceable. The Court concludes that Defendant's covenant not to compete is reasonable as to time. <u>See</u> <u>Weber</u>, 913 P.2d at 90. In addition, the geographical scope of the covenant not to compete is also reasonable given the nature of Wenger's business. And, it is clear that Wenger has a legally protectable interest in protecting certain confidential proprietary information and expertise and the issuance of a temporary restraining order

3

would protect Wenger's business interest.

Although the covenant not to compete prohibited Defendant from working for Wenger's competitors and other-similar businesses that manufacture or sell food extrusion process equipment or components thereof, it does not prohibit him from working in another aspect of the food manufacturing process. Defendant is free to work in any another industry that is not associated with the manufacture or sale of food extrusion process equipment. In this regard, the covenant not to compete did not place an undue burden on Defendant. In addition, the covenant not to compete does not injure the public in any way.

For these reasons, the Court finds that based on the information contained within the record thus far Wenger has a strong probability of succeeding on the merits of its claims.

B.  Irreparable Harm

Second, the Court finds that Wenger will suffer irreparable harm if a temporary restraining order is not issued at this time. Defendant is in possession of Plaintiff's trade secrets and confidential and proprietary information. If he continues to work with Clextral Group, one of Plaintiff's three global competitors, Plaintiff runs the risk that its confidential information could be divulged to its competitor.

C.  Balance of Harm vs. Injury

The balancing of the possible harm to Wenger with the injury that the injunction's issuance might inflict on other interested parties tips in favor of Wenger. If this temporary restraining order is not issued, Wenger faces possible exposure of its trade secrets and other confidential information to its limited number of competitors. While the Court regrets that Defendant will have to seek other employment, it is comforted by the fact that Defendant can seek employment from an almost limitless number of employers.

D.  Public Interest

Finally, to the extent the public interest is implicated at all, the public interest is protected in the enforcement of valid contracts.

For these reasons, it is hereby ordered that Defendant is enjoined and restrained, directly and indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of Defendant's current employer from:

(a) Disclosing, retaining originals and/or copies, or using Wenger's trade secrets, confidential and proprietary information including, but not limited to:
  (1) names, addresses and requirements of Wenger's customers and prospects;
  (2) the terms (including price terms) of Wenger's contractual relations with its customer;
  (3) processes and technology used in the production of Wenger's product, and such processes and technology being researched or under development;
  (4) Wenger inventions whether patentable or unpatentable;
  (5) Wenger drawings, technical documents, plans, computer-stored data, manufacturing specifications and programs; and
  (6) Wenger's business methods, marketing strategies, business opportunities, procedures, operative policies and pricing formulas.
(b) Failing to return to Wenger any and all originals and copies of any written material, documents, computer discs, or other computer-stored material in his possession which relates to the business activities of Wenger, including but not limited to the following:
  (1) names, addresses and requirements of Wenger's customers and prospects;
  (2) the terms (including price terms) of Wenger's contractual relations with its customer;

(3) Processes and technology used in the production of Wenger's product, and such processes and technology being researched or under development;

(4) Wenger inventions whether patentable or unpatentable;

(5) Wenger drawings, technical documents, plans, computer-stored data, manufacturing specifications and programs; and

(6) Wenger's business methods, marketing strategies, business opportunities, procedures, operative policies and pricing formulas.

(c) Competing with Wenger, being employed by, providing independent contractor services to or becoming connected in any manner with the ownership, management, operation or control of any firm or entity, including, but not limited to his current employer, Clextral Group in Tampa, Florida, which also engages in the manufacture or sale of food extrusion process equipment or components thereof, or serving as the U.S. representative of any foreign firm or entity which engages in such business.

(d) Defendant, and anyone acting in concert or participation with Defendant, including any agent, employee, officer or representative of Clextral Group, be further ordered to return to Wenger any and all information pertaining to Wenger customers or trade secrets, including but not limited to the information in sub-parts (b)(i)-(vi) above, whether in original, copied, computerized, handwritten or any other form, and purge any such information from their possession, custody, or control, on or before 5:00 p.m. on Monday, May 23, 2005, of notice to Defendant or his counsel of the terms of the Court's Order, provided however that any information so purged shall be printed prior to purging and returned to Wenger pursuant to this paragraph;

(e) A copy of the documents returned pursuant to subsection (c) shall be retained by Defendant's counsel for the sole purpose of defending him in this lawsuit. Neither Defendant nor Defendant's counsel shall disclose these documents or their contents to anyone other than Defendant, individuals who are reasonably expected by Defendant or his counsel to be potential expert or fact witnesses in this matter,

court reporters involved in depositions taken in this matter, court personnel, and personnel employed by or affiliated with Defendant's counsel's firm;

(f) Notwithstanding the provisions of Rule 26(d) and Local Rule 26.1(b), both parties are granted leave to commence discovery immediately in aid of preliminary injunction proceedings before the Court. The time for responding to motions for production of documents pursuant to Rule 34 of the Federal Rules of Civil Procedure is reduced to seven (7) days.

It is further ordered that Plaintiff shall file with the Clerk of this Court an injunction bond in the amount of $100,000.00. This amount is based upon Defendant's 2004 salary at Wenger and the amount of time the Court expects to reach a final decision in the case. Once the injunction bond is paid, the temporary restraining order shall be effective. See Fed. R. Civ. P. 65(c). In setting this amount, the Court does not intend to limit the amount of damages recoverable by Defendant should he prove that the temporary restraining order was wrongfully issued, including any claim Defendant might have under Rule 65(c).

An evidentiary hearing is scheduled to commence at 9 a.m. on June 1, 2005, at the United States Courthouse in Kansas City, Missouri. Each party will be given an opportunity to present evidence and arguments, which shall not exceed three (3) hours for each party. The parties may further brief any issues raised in Plaintiff's Complaint between now and May 26, 2005.

IT IS SO ORDERED.

DATE: May 19, 2005   /s/ Ortrie D. Smith
                     ORTRIE D. SMITH, JUDGE
                     UNITED STATES DISTRICT COURT